UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
TEAM AIR EXPRESS, INC.,

              Plaintiff,

    - against -

A. HEFFCO TECHNOLOGIES, INC.,

              Defendant.
-----------------------------------------------------X

**REPORT AND RECOMMENDATION**

06 CV 2742 (NG)

Plaintiff Team Air Express, Inc. ("Team Air") commenced this action on June 2, 2006

against defendant A. Heffco Technologies, Inc., d/b/a Let's Go Digital (LGDSuperstore.com),

PricesRite (PricesRite.com), Editor's Choice (EdsChoice.net), DealzNet.com, and

HypAudio.com, (hereinafter "A. Heffco"), seeking damages for breach of a contract in which

Team Air agreed to provide interstate transportation of numerous road and/or air shipments to A.

Heffco's customers, in return for the payment by A. Heffco of freight charges and other service

and related charges to Team Air in accordance with freight invoices issued by Team Air to A.

Heffco. (Compl.[1] ¶ 4).

By motion filed November 30, 2007, Team Air moved for default judgment against A.

Heffco. On January 7, 2008, this Court issued a Report and Recommendation, recommending

that the Clerk of the Court be directed to enter a default against defendant pursuant to Rule 55(a)

of the Federal Rules of Civil Procedure based on defendant's failure to obtain new counsel

within the time period ordered by the Court. On March 4, 2008, the district court adopted the

Report and Recommendation of this Court, ordering the entry of default, granting plaintiff's

---

[1]Citations to "Compl." refer to plaintiff's Complaint, filed June 2, 2006.

motion to strike the answer and counterclaim, and referring the case to the undersigned to conduct an inquest and prepare a Report and Recommendation concerning the amount of damages to be awarded.

## FACTUAL BACKGROUND

According to the Complaint, plaintiff is a corporation organized and existing under and by virtue of the laws of the state of Texas, with an office and its principal place of business located at 639 W. Broadway, Winnsboro, Texas 75494. (Compl. ¶ 1). Defendant is a corporation organized and existing under the laws of the state of New York, with its principal office and place of business located at 1643 McDonald Avenue, Brooklyn, New York 11223. (Id. ¶ 2). According to plaintiff, A. Heffco is an internet supplier of electronic goods, in this case plasma television sets. (Tr.[2] at 3).

Plaintiff alleges that between November 2, 2005 and April 19, 2006, Team Air contracted with A. Heffco to provide interstate transportation of defendant's shipments with respect to numerous road and/or air shipments that were being transported by defendant to its customers, with the express agreement and understanding that defendant would pay the freight charges and other service and related charges to plaintiff for said shipments in accordance with freight invoices issued by Team Air to A. Heffco. (Compl. ¶ 4). According to counsel's representation, A. Heffco would take orders from its online customers and book the shipments with Team Air, which would carry the order to its destination. (Tr. at 3). The shipments would be booked via a

---

[2]Citations to "Tr." refer to pages in the transcript of proceedings held before this Court on April 21, 2008.

telefax communication from A. Heffco to Team Air, which used the fax as a pick-up notice. (Id. at 4, 10). Team Air would prepare an air waybill or bill of lading, pick up the shipment and deliver it to its destination. (Id.) Team Air would also prepare an invoice for the shipment setting forth the freight charges that were based on a rate schedule negotiated between representatives of the two parties. (Id. at 3-4, 10). The invoices would be sent to A. Heffco which, under the contract with Team Air, was responsible as shipper to pay the charges. (Id. at 4). Team Air alleges that although it rendered numerous services and incurred charges on behalf of A. Heffco and its customers, defendant, despite repeated demands for payment, failed to make payment on the freight invoices issued by Team Air. (Compl. ¶¶ 5-8).

At the Inquest Hearing held before this Court on April 21, 2008, plaintiff presented the testimony of Joseph Maurer, President of Team Air. (Tr. at 9). Mr. Maurer confirmed that Plaintiff's Exhibit 1 consists of the various unpaid invoices reflecting freight charges that had not been paid by A. Heffco during a period of several months to a year. (Id. at 11-12; Ex. 1). According to the Complaint, this period encompassed the dates between November 2, 2005, and April 19, 2006. (Compl. ¶¶ 4-6). According to Mr. Maurer, on or about May 4, 2006, plaintiff sent a statement to defendant summarizing all of the outstanding freight charges owed in the total amount of $90,211.35. (Tr. at 13; Ex. 2). The charges on this statement remain unpaid as of today. (Id.)

In response to Team Air's demand for payment, defendant contended that certain charges were not paid because there were claims for damage incurred in connection with certain of the shipments. (See id. at 4). However, plaintiff contends that, according to the terms and conditions of the Contract, freight charges were to be paid regardless of such claims. (See id. at

3

4, 15; Ex. 3). Indeed, the terms and conditions explicitly state that claims will not be dealt with unless outstanding freight charges are paid first. (Id.)

According to plaintiff's counsel, some of the claims were adjusted but the funds were then applied against the outstanding freight charges, leaving a large number of invoices still unpaid as of May 4, 2006. (Id. at 5; 17). Specifically, the amount of liability owed by Team Air was determined by an inspector sent by Team Air's claims department to evaluate the damage and determine if the damage occurred in shipment or otherwise. (Id. at 18). Team Air then asked the shipper for any information regarding any proof of the value of the shipment, proof of costs, and estimated repair costs. (Id. at 18-19). With respect to the amounts adjusted, the Team Air claims department adjusted the claims in accordance with the Contract and then set that sum of money aside in an escrow account totaling $10,744.25. (Id. at 17). A spreadsheet of the claims that were mitigated was prepared and Mr. Maurer noted that title to all of the shipments for which claims were made were held by A. Heffco, and not by any of their customers. (Id. at 17-20; Ex. 5). Team Air now seeks permission to use the amounts held in escrow as an offset against the freight charges still owed. (Id. at 6).

Team Air also has asserted a lien on certain shipments of A. Heffco and, in accordance with paragraph 15 of the Conditions of Contract, Team Air has retained custody of those goods. (Krauzlis Aff.[3] ¶ 11). Given that a number of the shipments have claims for damage or due to the age of the item are facing a reduction in value, Team Air seeks authority to perfect its lien and sell the items. Team Air would then agree to a reduction in the net sum received from A. Heffco

---

[3]Citations to "Krauzlis Aff." refer to the Amended Affidavit of James P. Krauzlis, Esq. in Support of Damage Calculations, dated April 22, 2008.

4

equivalent to the amounts received as a result of the sale. (Id.)

Finally, Team Air seeks to recover prejudgment interest at 1.5% per month from May 4, 2006 to the date of the Inquest Hearing, April 21, 2008 in accordance with the signed Contract, to wit, clause 16 of the Conditions of Carriage, submitted into evidence by plaintiff as "Exhibit A." (Tr. at 6-7; Ex. A). Plaintiff calculates the interest owed for this period to be $31,122.92. (Krauzlis Aff. ¶ 6). The total amount of damages sought, including interest, equals $121,334.27.

Plaintiff also seeks attorney's fees and disbursements incurred in pursuing collection of the unpaid freight invoices equaling $23,520.53 and court costs incurred in filing the subject action to collect the unpaid freight invoices, including the filing fee of $350.00 and the process service fee of $45.00, for total costs incurred of $395.00. (Id. ¶¶ 8, 9). Thus, plaintiff seeks a total award of damages of $145,249.80 from defendant A. Heffco. (Id. ¶ 13).

## PROCEDURAL BACKGROUND

On June 2, 2006, plaintiff filed this action seeking damages for breach of contract. Defendant filed an Answer and First Counterclaim on July 31, 2006 and discovery commenced. During the course of discovery, the Court conducted a number of conferences at which the issue of settlement was addressed. On or about October 11, 2007, defendant's counsel requested leave to withdraw from further representation of the defendant. The Court granted counsel's motion to be relieved and ordered defendant to obtain new counsel within 30 days. Defendant thereafter failed to obtain counsel in accordance with the Court's Order and on November 30, 2007. Accordingly, plaintiff moved for entry of default, which was entered following an Order of the district court, dated March 4, 2008, which referred the matter to the undersigned to conduct an

5

inquest and issue a report on damages.

On March 5, 2008, this Court entered an Order requiring the parties to submit their papers in support of their damage calculations by April 7, 2008 and setting a hearing for April 21, 2008. At the Inquest Hearing, plaintiff entered into evidence copies of the various air waybill freight invoices issued by Team Air to A. Heffco, as well as the Accounts Receivable Statement addressed to A. Heffco, dated May 4, 2006, listing each unpaid invoice and showing a total outstanding balance due on freight charges of $90,211.35. (Krauzlis Aff. ¶¶ 3-4).

Also at the Inquest Hearing, plaintiff orally moved to amend the Complaint to add claims against two of the principals of A. Heffco. The Court directed plaintiff to submit a written request to amend given that defendant had failed to appear at the inquest and had not previously been given notice that plaintiff would be seeking to amend its Complaint.

## DISCUSSION

A. Damages

When a default judgment is entered, the defendant is deemed to have admitted all of the well-pleaded factual allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); see also Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (gathering cases). For the purposes of an inquest, a court accepts as true all factual allegations in the complaint, except those claims relating to damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158; Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). However, "[w]hile a party's default is deemed to constitute a

6

concession of all well-pleaded allegations of liability, it is not considered an admission of damages." Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158. The burden of proof on damages rests with the plaintiff. See id.

Here, Team Air has filed a reasonably detailed Affidavit with accompanying exhibits itemizing the damages incurred, and presented additional information regarding damages at the Inquest Hearing on April 21, 2008. See Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (gathering cases), aff'd, 873 F.2d 38 (2d Cir. 1989) (holding that an evidentiary hearing on damages is not necessary, so long as the court ensures that "there is a basis for the damages specified in a default judgment"). Defendant, however, has not only failed to respond to plaintiff's motion for entry of a default judgment, but it also failed to respond to this Court's March 5, 2008 Order relating to the calculation of damages. Thus, plaintiff's evidence on damages is undisputed.

Given the opportunities afforded defendant and its apparent lack of interest in participating in these proceedings, there is no compelling reason for further delay.

1) Calculation of Default Judgment Damages

In its Application, and as detailed below, Team Air seeks an award of damages in the amount of $145,249.80, a sum that incorporates plaintiff's request for interest on all damages requested.

In support of its request for the principal amount of damages sought, plaintiff submitted into evidence an Accounts Receivable Statement addressed to A. Heffco, dated May 4, 2006, listing each unpaid invoice issued to defendant by plaintiff and showing a total outstanding

balance due on freight charges of $90,211.35. (Krauzlis Aff. ¶ 4; Ex. 2). Plaintiff also submitted the individual invoices detailing each air waybill charged to defendant over the course of the contract. (Id. ¶ 3, Ex. 1). However, upon review of the evidence submitted by plaintiff, the Court notes several inconsistencies between the summary Accounts Receivable Statement, dated May 4, 2006, and the individual invoices. The individual invoices total $83,925.28, leaving many invoices listed on the Accounts Receivable Statement unaccounted for and resulting in a discrepancy of $6,286.07. (Compare Exs. 1 and 2). In light of these inconsistencies, the Court concludes that the individual invoices are a more accurate reflection of the amounts owed and that plaintiff has failed to substantiate its request for the full $90,211.35.

Accordingly, the Court respectfully recommends that plaintiff be awarded the sum of $83,925.28, representing the amounts shown on the individual invoices.


2) Interest

Plaintiff also requests an award of interest in the amount of $31,122.92, calculated over a period of 23 months, from May 4, 2006 to the date of the Inquest Hearing, April 21, 2008, based on plaintiff's requested principal amount of $90,211.35. (Krauzlis Aff. ¶ 6). However, because the principal damages have been adjusted downward to $83,925.28, the monthly interest award must also be adjusted accordingly.

Unfortunately, it is unclear how plaintiff calculated the amount of interest requested, and the papers submitted to date fail to explain the methodology used. Plaintiff did submit into evidence a copy of the Conditions of Contract set forth on the reverse side of each of the air waybill freight invoices issued to defendant. (Id. ¶ 5). According to clause 16 of the Conditions

8

of Contract, plaintiff is entitled to charge defendant a 1.5% monthly interest rate on unpaid invoices. (Id.; Ex. A). Under this contractual provision, it appears that as payment for each individual invoice becomes due, plaintiff is entitled to receive 1.5% per month until that invoice is paid. Therefore, since the invoices became due at different times, contractual interest would have to be calculated on each of the 450 invoices for the period that each individual invoice was outstanding. From the papers submitted to the Court, it does not appear that plaintiff calculated interest in that fashion, but rather selected the arbitrary date of May 4, 2006 as the starting date for assessing interest on all of the invoices, regardless of when they became due. Plaintiff has not explained its methodology for selecting that start date, nor has it explained where this method is authorized under the contract.

In addition, the Second Circuit in its recent decision of Schipani v. McLeod made clear that a plaintiff in a diversity action such as this is entitled to prejudgment interest on the entire unpaid balance pursuant to state law. No. 06 CV 5733, slip op. at 12-13 (2d Cir. July 29, 2008) (citing Baker v. Dorfman, 239 F.3d 415, 425 (2d Cir. 2000); N.Y. C.P.L.R. § 5002 (McKinney 1992)). See also Spodek v. Park Prop. Dev. Assocs., 96 N.Y.2d 577, 581-82, 759 N.E.2d 760, 762-63, 733 N.Y.S.2d 674, 676-77 (2001) (citing N.Y. C.P.L.R. § 5001 (McKinney 1992)); Van Nostrand v. Froelich, 44 A.D.3d 54, 844 N.Y.S.2d 293 (2d Dep't 2007). Plaintiff is also entitled to postjudgment interest as governed by federal statute. Schipani v. McLeod, No. 06 CV 5733, slip op. at 13 (citing Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 100 (2d Cir. 2004)). Pursuant to 28 U.S.C. § 1961(a), plaintiff is entitled to postjudgment interest calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [judgment],"

9

computed daily from "the date of the entry of the judgment" -- the date default judgment is entered by the district court. Id. (citing 28 U.S.C. § 1961(a)).

Plaintiff failed to address either prejudgment interest under state law or postjudgment interest under federal law. If plaintiff is seeking recovery of prejudgment interest running from the date of the default until the date the court enters a specific award of damages, plaintiff has not provided this Court with those figures and indeed, until the interest owed pursuant to the contractual provision is determined, this prejudgment amount, if requested, cannot be determined.

Accordingly, if plaintiff is seeking to recover interest under 1) the contractual provision, and/or 2) prejudgment interest under Sections 5001-5002 of New York's Civil Practice Law and Rules, it is respectfully recommended that plaintiff be given until August 13, 2008 to supplement its submissions regarding the interest award in this matter.

### 3) Attorney's Fees and Costs

#### a) Plaintiff's Fee Request

In addition to its claim for principal and interest, plaintiff requests an award of $23,520.53 in attorney's fees and $395.00 in costs, consisting of a $350.00 filing fee and a $45.00 service of process fee, for total fees and costs of $23,915.53, to compensate counsel for their services rendered to plaintiff in connection with this action. (Compl. ¶¶ 8-9). Pursuant to paragraph 17 of the Conditions of Contract between A. Heffco and Team Air, plaintiff may, in the event of a default, bring a suit for collection and is entitled to recover legal fees, filing fees, costs of collection, plus court costs and attorney's fees from the defendant. (Id. ¶¶ 7-8).

In this case, the Court Ordered plaintiff to produce detailed billing records substantiating the requested attorney's fees. In response, counsel submitted into evidence its itemizations of attorney's fees and disbursements incurred in pursuing collection of the unpaid freight invoices, the total amount for which equals $23,520.53. (Id. ¶ 8). Specifically, plaintiff provided the Court with time records detailing 39 hours worked on the matter, including 15.4 hours charged at a rate of $175.00 per hour and 23.6 hours charged at a rate of $200[4] per hour, equaling $7,415.00 in attorney's fees. Counsel also produced disbursement records totaling $16,105.53, representing the attorney's fees charged by plaintiff's local counsel.[5] In addition, plaintiff also seeks reimbursement of the court costs incurred in filing the subject action to collect the unpaid freight invoices, including the filing fee of $350.00 and the service of process fee of $45.00, for total court costs incurred of $395.00. (Id. ¶ 9).

b) Standards

To calculate a reasonable attorney's fee under cases involving a fee shifting statute, courts traditionally determine a "lodestar" figure by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424,

---

[4]Plaintiff's counsel increased his rate per hour from $175 per hour in 2006 to $200 per hour, effective January 1, 2007. (Krauzlis Aff., Ex. 4).

[5]The Court notes that the billing records provided by plaintiff presents a potentially confusing arrangement among the attorneys representing plaintiff and believes it is worth a brief discussion for the sake of clarification. It appears to the Court that the lead attorney for plaintiff, James Krauzlis of Badiak & Will, LLP was hired as local counsel by George Styliades, Esq., who also represents plaintiff and provided the billing records. (Id.) According to Mr. Styliades' records, he worked a total of 39 hours on the case, and Mr. Krauzlis worked a total of 89.5 hours. Mr. Styliades labels his hours as "attorney fees" and Mr. Krauzlis' hours as "disbursements" since it appears that he was paying Mr. Krauzlis.

433 (1983); see also Blanchard v. Bergeron, 489 U.S. 87, 94 (1989); Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1159 (2d Cir. 1994). In Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany and Albany County Board of Elections, the Second Circuit stated that "the focus of the district courts is no longer on calculating a reasonable *fee*, but rather on setting a reasonable hourly rate, taking account of all case-specific variables." 522 F.3d 182, 189, 191 (2d Cir. 2008) (emphasis in original) (clarifying that "a district court may use an out-of-district hourly rate -- or some rate in between the out-of-district rate sought and the rates charged by local attorneys -- in calculating the presumptively reasonable fee if it is clear that a reasonable paying client would have paid those higher rates"). Traditionally, courts have used the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Luciano v. Olsten Corp., 109 F.3d at 115 (citing Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984)).

Courts also look to what a reasonable paying client would be willing to pay in determining the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections, 522 F.3d at 190. In doing so, courts are directed to consider, inter alia:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 187 n.3 (citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.

1974)); see also Warner Bros. Entm't Inc. v. Carsagno, 06 CV 2676, 2007 WL 1655666, at *7

(E.D.N.Y. June 4, 2007) (applying some of the Arbor Hill factors).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise
> and capacity of the client's other counsel (if any), the resources
> required to prosecute the case effectively (taking account of the
> resources being marshaled on the other side but not endorsing
> scorched earth tactics), the timing demands of the case, whether an
> attorney might have an interest (independent of that of his client) in
> achieving the ends of the litigation or might initiate the
> representation himself, whether an attorney might have initially
> acted *pro bono* (such that the client might be aware that the
> attorney expected low or non-existent remuneration), and other
> returns (such as reputation, etc.) that an attorney might expect from
> the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd.

of Elections, 522 F.3d at 184 (emphasis in original); see also Southern New Eng. Tel. Co. v.

Global NAPS, Inc., No. 04 CV 2075, 2008 WL 1848899, at *1-4 (D. Conn. Apr. 25, 2008)

(applying some of these Arbor Hill factors).

Being familiar with the prevailing rates in the community through the numerous fee

applications reviewed by this Court, see Assoc. for Retarded Citizens of Conn., Inc. v. Thorne,

68 F.3d 547, 554 (2d Cir. 1995) (holding that "a [court] may 'rely in part on [its] own knowledge

of private firm hourly rates in the community'") (quoting Miele v. New York State Teamsters

Conference Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987)), and having reviewed other

attorney's fee applications arising in this district, it is clear that the range of "reasonable"

attorney's fee rates varies depending on the type of case, the nature of the litigation, the size of

the firm, and the expertise of its attorneys. The rates range from $175 per hour, which is the rate

that has been applied in the context of default motions, see, e.g., Schwartz v. Chan, 142 F. Supp.

2d 325, 332 (E.D.N.Y. 2001) (finding that $175 per hour was reasonable in an action resulting in

a default judgment); Walia v. Vivek Purmasir & Assocs., Inc., 160 F. Supp. 2d 380, 382, 397

(E.D.N.Y. 2000) (increasing from $175 per hour to $200 per hour the rate for a sole practitioner

in a gender discrimination litigation resulting in default judgment), to rates of up to $540 per

hour for partners in a major law firm. See, e.g., Blue Cross & Blue Shield of N.J., Inc. v. Philip

Morris, Inc., 190 F. Supp. 2d 407, 425-29 (E.D.N.Y. 2002) (finding reasonable, in the context of

tobacco litigation, fees of $540 per hour for senior partners at Dewey Ballantine, LLP, $312 to

$449 per hour for other partners, $273 per hour for associates, and $122 per hour for legal

assistants).

Given the prevailing rates for attorneys in this district and in comparable cases, the Court

finds that the $175-$200 per hour rates requested by plaintiff's counsel are appropriate. The

Court has also reviewed the billing records submitted in connection with this action and

concludes that the hours expended were not unreasonable in light of the numerous conferences

attended by counsel, the need to conduct discovery, and to prepare motion papers in connection

with defendant's default, including time spent preparing for and in attendance at the Inquest

Hearing.

Moreover, the Court finds that the amounts requested in costs are also reasonable and

consistent with the amounts subject to recovery under the terms and conditions of the Contract.

Accordingly, it is respectfully recommended that plaintiff's counsel be awarded

$23,915.53 in fees and costs.

C.  Settlement Amounts

Paragraph "15" of the Conditions of Contract, entitled a "Lien on Goods," provides in part, "Team shall have a lien on any goods shipped, for failure to pay charges due and payable on account.  Team may refuse to surrender possession of the goods until such charges on account are paid in full." (Krauzlis Aff. ¶ 10).  Plaintiff requests that the Court permit the sale of the units held in the plaintiff's warehouse to perfect the lien and allow plaintiff to apply the proceeds of any such sale of the goods to the final judgment entered in favor of plaintiff. (Id. ¶ 11).

Plaintiff also submits a number of claims previously presented by defendant on units carried by plaintiff, the proceeds of which are currently being held in escrow by plaintiff. (Id. ¶ 12).  As of the date of the Inquest Hearing, the total amount held in escrow equaled $10,744.25. (Id.)  Plaintiff requests that the Court permit plaintiff to apply the claim funds held in escrow as a credit in favor of defendant A. Heffco. (Id.)

Accordingly, since defendant has submitted no evidence in dispute of these amounts, the Court respectfully recommends enforcement of the conditions of the Contract.  In that regard, it is respectfully recommended that plaintiff be permitted to perfect its lien on any goods still held, with the proceeds to be applied in satisfaction of the judgment recommended by this Court.  Similarly, the Court respectfully recommends that plaintiff's request to apply the $10,744.25 currently held in escrow to the amount owed in judgment also be granted.

Accordingly, it is respectfully recommended that plaintiff's award be reduced by $10,744.25, as well as by any amounts recovered from the sale of any goods held in plaintiff's warehouse.

15

D. Motion to Amend

Following entry of default judgment on March 4, 2008, plaintiff, by letter dated April 22, 2008, moved to amend the Complaint to assert claims for money damages against A. Heffco's corporate officers, Larry Haffez and Max Zalta, in their individual capacities. Although it is unclear whether defendants were personally served with plaintiff's letter motion to amend,[6] defendants have to date presented no opposition to the motion.

1) Standards

Federal Rule of Civil Procedure 15(a) provides that courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). The Supreme Court has said that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Indeed, the courts have interpreted Rule 15(a) liberally, allowing plaintiffs to add new or alternative causes of action as well as to add or substitute defendants. Grace v. Rosenstock, 169 F.R.D. 473, 479 (E.D.N.Y. 1996). However, it is within the district court's discretion whether to grant or deny leave to amend. Blakely v. Wells, 209 Fed. Appx. 18, 20 (2d Cir. 2006) (citing Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988)). A district court may deny leave for "good reason," such as futility, bad faith, undue delay, or undue prejudice to the opposing party, but "outright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." McCarthy v. Dun & Bradstreet Corp.,

---

[6]Given plaintiff's failure to file the letter motion electronically on ECF, and no indication that the individuals have been served with the letter, it is unclear whether the motion should be considered in the first instance.

482 F.3d 184, 200-01 (2d Cir. 2007). An amendment to a complaint would be futile if it could

not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

Therefore, in examining the validity or futility of the amendment, the inquiry is

comparable to that required on a motion to dismiss pursuant to Rule 12(b)(6). Narvarte v. Chase

Manhattan Bank, N.A., No. 96 CV 8133, 1998 WL 690059, at *1 (S.D.N.Y. Oct. 2, 1998). The

Court must construe the facts alleged by the party proposing the amendment to be true and view

them in the most favorable light, id. (citing Middle Atl. Utils. Co. v. S.M.W. Dev. Corp., 392

F.2d 380, 386-87 (2d Cir. 1968)), and the Court should not dismiss the complaint as long as it

satisfies the "plausibility" standard announced in Bell Atlantic Corp. v. Twombly, 127 S. Ct.

1955, 1964-65, 1974 (2007) (requiring "only enough facts to state a claim to relief that is

plausible on its face"); see also Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (interpreting

Twombly as requiring a "flexible 'plausibility standard,' which obliges a pleader to amplify a

claim with some factual allegations in those contexts where such amplification is needed to

render the claim plausible") (emphasis in original).


2) Plaintiff's Proposed Amendment

Plaintiff first raised the issue of its intention to seek authority to amend the Complaint

during the course of the Inquest Hearing on April 22, 2008. Given that defendant had defaulted

and was not present for the hearing, this Court directed plaintiff's counsel to proceed in writing

to request permission to amend. In its letter dated April 22, 2008, plaintiff requested leave to

amend the Complaint to include as additional defendants, Larry Haffez, who represented that he

ran A. Heffco, and Max Zalta, who represented that he managed the books for A. Heffco. (Pl.'s Ltr[7] at 1). Plaintiff asserts that these principals should be held individually liable for A. Heffco's debt because they allegedly intended to perpetrate a fraud by producing forged telefax pick-up orders in discovery.[8] (Id.; see also Tr. at 22-23; Exs. 7, 7-A, 7-B, 8, 8-A, 8-B). These pick-up orders represented that there were certain "declared values" for a number of shipments that were subsequently factored into claims submitted by A. Heffco. (Id.) According to Mr. Maurer, who investigated these submissions, he subsequently found that the original Team Air telefax pick-up orders showed declared values totaling $0 for the shipments submitted by defendant, contrary to the information shown on defendant's documents. (Id.) In its letter, plaintiff argues that an amendment naming these two corporate officers as defendants is necessary to deal with their fraudulent conduct and plaintiff further seeks to hold them individually liable for A. Heffco's entire debt based on their roles in this alleged fraud. (Id. at 1-2). As counsel indicated:

> [T]his is a clear indication of a principle [sic] of the company who controls the company, domineers the company, trying to perpetrate a fraud on the Court and us with respect to the issue of declared values for which I think that we can pierce the corporate veil and holds [sic] them personally accountable for the assessments against A. Heffco.

(Tr. at 25).

---

[7]Citations to "Pl.'s Ltr" refer to the plaintiff's letter to the Court requesting to amend the Complaint, dated April 22, 2008.

[8]Plaintiff alleges that the forged pick-up orders were produced in discovery. However, it is the Court's recollection that these documents were produced in the course of settlement discussions. To the extent that the alleged fraud arose out of documents produced in settlement negotiations, plaintiff has failed to support its motion to impose liability on the individual defendants in light of the fact that Rule 408 of the Federal Rules of Evidence provides that documents produced during settlement negotiations are not admissible to prove liability or damages. Fed. R. Evid. 408.

3) Analysis

As an initial matter, the Court notes that plaintiff failed to present the Court with a

proposed amended complaint and failed to file a motion to amend, setting forth the specific bases

on which plaintiff believed that it would be able to state a claim against the two individuals

sought to be added at this time.[9] Like any other motion, a motion to amend under Rule 15(a) is

subject to the requirements of Federal Rule of Civil Procedure 7(b), which requires the moving

party to set forth with particularity the relief sought and the bases supporting the motion. Fed. R.

Civ. P. 7(b). Generally, a party requesting leave to file an amended pleading such as requested

here, must accompany his motion with a proposed amended complaint that complies with the

general pleading rules. Go v. Rockefeller Univ., No. 04 CV 4008, 2008 WL 619039, at *4

(S.D.N.Y. Mar. 6, 2008) (citing Abercrombie v. Andrew College, 04 CV 7717, 2006 WL

1716857, at *25 (S.D.N.Y. June 15, 2006) (holding that "in making a motion for leave to amend,

plaintiffs must attach a proposed amended complaint so that the Court and the opposing party has

an opportunity to understand the exact changes proposed"); American Tissue, Inc. v. Donaldson,

Lufkin & Jenrette Sec. Corp., 233 F.R.D. 327, 329 (S.D.N.Y. 2005); Jonas v. Rich, 02 CV 498,

2004 WL 1542231, at *2 (S.D.N.Y. July 8, 2004); 6 Charles A. Wright, Arthur R. Miller & Mary

Kay Kane, Federal Practice & Procedure § 1485 at 603 (2d ed. 1990)). This provides the Court

with the information necessary to evaluate the plaintiff's factual basis for the proposed

amendment and the issue of futility. In this case, the absence of a proposed amended complaint

has complicated the Court's analysis because it is unclear exactly what the plaintiff's claims

---

[9]The Court further notes that plaintiff's papers supporting their claim of fraud are
inconsistent at best and distressingly indecipherable.

19

would be. Although the Court could recommend denial of the motion solely on the basis of plaintiff's failure to submit a proposed amended Complaint,[10] in this instance, the Court has considered this motion based on the statements made by counsel during the Inquest Hearing and in the plaintiff's counsel's letter of April 22, 2008 to highlight the problems raised by plaintiff's letter motion.

In the first place, there is very little precedent for a plaintiff to request permission to file an amendment to a complaint for the purpose of adding defendants after a default has been entered. Indeed, the standard under Rule 15 requires courts to "freely give leave to amend the complaint when justice so requires" and would appear to allow for an amendment such as that requested by plaintiff. Fed. R. Civ. P. 15. However, there is little precedent for doing so in circumstances such as these.[11] In Hill v. Republic of Iraq, 175 F. Supp. 2d 36, 38 n.2 (D.D.C. 2001), the court granted leave to amend the complaint six times after default had been entered. However, the amendments were made to allow additional named plaintiffs to join in a case where individuals filed suit against a country that had held them hostage. Amendment of a complaint such as that in Hill is reasonable after default because plaintiffs may have been identified after suit was filed but were, nonetheless, equally entitled to any damages.

By contrast, in Brennan v. Gibson, No. 73 CV 18, 1974 WL 1241, at *1 (M.D. Fla. June 18, 1974), the court denied leave to amend the complaint when plaintiff sought to obtain

---

[10]Generally, in circumstances where the moving party has failed to submit the appropriate motion and supporting proposed amendment, courts have denied the motion without prejudice. Abercrombie v. Andrew College, 2006 WL 1716857, at *25.

[11]Indeed, plaintiff's counsel's letter failed to cite any persuasive authority on the propriety of its request to amend after the entry of default.

judgment against an additional entity. The Brennan court noted: "[w]hile the provisions of Rule 15(b) allow amendments to conform to the evidence when 'issues not raised by the pleadings are tried by express or implied consent of the parties,' the Court is aware of no general principle of law or specific provision of the Act which allows the amendment of pleadings so as to join an additional party defendant after default has been entered and without effective service of process." Id. at *2.

The Supreme Court has emphasized the importance of providing the opposing party with an opportunity to respond to any proposed amendments. See Nelson v. Adams USA, Inc., 529 U.S. 460, 460 (2000) (noting that the newly added defendant "was never afforded a proper opportunity to respond to the claim against him. Instead, he was adjudged liable the very first moment his personal liability was legally at issue"). The right to respond is "fundamental to due process" and failing to provide such an opportunity qualifies as a procedural style that "has been questioned even in systems, real and imaginary, less concerned than ours with the right to due process." Id. at 467. Given Rule 15's requirement that amendments be allowed only "where justice so requires," it is particularly important that courts avoid the introduction of amendments that are substantially prejudicial or inconvenient to the opposing party "if the proffered amendment will not promote the disposition of the case on its merits." See 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1484 (3d ed. 1998) (citing Marson v. Jones & Laughlin Steel Corp., 87 F.R.D. 151, 152 (D.C. Wis. 1980)).

Under the circumstances, even if this Court were to recommend granting the motion to amend, it seems apparent that plaintiff could only proceed upon service of the amended complaint upon the newly added defendants, who would then be given time to answer or

21

otherwise respond to the new claims. Thus, to the extent that plaintiff is seeking an order from the Court 1) authorizing the amendment to the Complaint, and 2) entering judgment against the newly added defendants, this Court respectfully recommends that plaintiff's motion be denied.

Even if plaintiff is not seeking to impose liability on the individuals through this default, the Court must consider whether the amendment itself would be futile. It is well-established that courts may deny leave to amend if the proposed change is clearly frivolous or advances a claim or defense that is legally insufficient on its face, including assertions made in bad faith. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d at 200-01; see also 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1487 (3d ed. 1998). Plaintiff asserts that because Larry Heffez and Max Zalta produced fabricated documents during the course of discovery, they should be held individually liable for all of the damages assessed against A. Heffco. (Pl.'s Ltr at 1). Plaintiff asserts, without supporting authority, that the actions of these individuals are sufficient to pierce the corporate veil and hold them individually responsible.

In Morris v. N.Y. State Dep't of Taxation & Finance, the New York Court of Appeals set forth the law regarding piercing the corporate veil in New York. 82 N.Y.2d 135, 140, 603 N.Y.S.2d 807, 810, 623 N.E.2d 1157, 1160 (1993). Specifically, the Court stated that:

> [t]he concept of piercing the corporate veil is a limitation on the accepted principles that a corporation exists independent of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners.

Id. The plaintiff bears the burden of proving, as a matter of law, that defendant's corporate veil should be pierced. See Mars Elecs. of N.Y., Inc. v. U.S.A. Direct, Inc., 28 F. Supp. 2d 91, 96

(E.D.N.Y. 1998). The question of "[w]hether the corporate veil should be pierced requires a fact specific inquiry; there are no bright-line rules." DER Travel Servs. v. Dream Tours & Adventures, Inc., No. 99 CV 2231, 2005 WL 2848939, at *8 (S.D.N.Y Oct. 28, 2005). See also MAG Portfolio Consult, GMBH v. Merlin Biomed Group LLC, 268 F.3d 58, 64 (2d Cir. 2001); Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 139 (2d Cir. 1991) (holding that "the infinite variety of situations that might warrant disregarding the corporate form is not an easy task because disregarding corporate separateness is a remedy that 'differs with the circumstances of each case'") (quoting Am. Protein Corp. v. AB Volvo, 844 F.2d 56, 60). Furthermore, while there are no strict requirements that must be satisfied before a court may exercise the power to pierce the corporate veil, the Morris court found that piercing the corporate veil requires a showing that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." See Morris v. N.Y. State Dep't of Taxation & Finance, 82 N.Y.2d at 141, 603 N.Y.S.2d at 810, 623 N.E.2d at 1160-61 (internal citations omitted); American Fuel Corp. v. Utah Energy Dev. Co. Inc., 122 F.3d 130, 134 (2d Cir. 1997) (citing Morris for applicable New York law on piercing the corporate veil).

Prior to the Court of Appeals decision in Morris, the Second Circuit had held that New York law permitted a plaintiff to pierce the corporate veil when only one of these two factors had been satisfied. See Thrift Drug, Inc. v. Universal Prescription Adm'rs, 131 F.3d 95, 97 (2d Cir. 1997) (quoting Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc., 2 F.3d 24, 26 (2d Cir 1993)). Morris rejected this reasoning, making it clear that under New York law, a plaintiff seeking to pierce the corporate veil must prove both complete domination and that the dominant

23

role was used to commit fraud with respect to the transaction at issue. See Mars Elecs. of N.Y., Inc. v. U.S.A. Direct, Inc., 28 F. Supp. 2d at 97; see also American Fuel Corp. v. Utah Energy Dev. Co., Inc., 122 F.3d at 134 (quoting Morris v. N.Y. State Dep't of Taxation & Finance, 82 N.Y.2d at 141-42, 603 N.Y.S.2d at 811, 623 N.E.2d at 1161) (holding that "[w]hile complete domination of the corporation is the key to piercing the corporate veil . . . such domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required"); Thrift Drug, Inc. v. Universal Prescription Adm'rs, 131 F.3d at 97 (quoting Morris v. N.Y. State Dep't of Taxation & Finance, 82 N.Y.2d at 142, 603 N.Y.S.2d at 811, 623 N.E.2d at 1161) (holding that "[t]he party seeking to pierce the corporate veil must establish that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetuate a wrong or injustice against that party such that a court in equity will intervene"); Freeman v. Complex Computing Co., Inc., 119 F.3d 1044, 1052-53 (2d Cir. 1997) (holding that New York law will not allow the corporate veil to be pierced in the absence of a showing that the domination was used to commit fraud or other wrong).

Additionally, the Second Circuit, in Passalacqua Builders v. Resnick Developers South, Inc., set forth a number of factors to help determine the dominance of the corporate officer, including "whether there is overlap in ownership, officers, directors, and personnel," "the amount of business discretion displayed by the allegedly dominated corporation," and "whether the alleged dominator deals with the dominated corporation at arms length." 933 F.2d at 139. See also American Fuel Corp. v. Utah Energy Dev. Co., Inc., 122 F.3d at 134 (citing Passalacqua Builders v. Resnick Developers South, Inc., 933 F.2d at 139).

In this case, plaintiff has provided no information regarding the exercise of domination by either of these individuals over the corporate entity, or that they used that domination to commit
24

the fraud alleged here. Indeed, as plaintiff candidly admits, it has little if any information as to

what specific corporate positions were held by either of these individuals. Given the paucity of

information provided to the Court regarding the factual basis underlying plaintiff's allegations

against these individuals and the basis on which plaintiff believes the corporate veil will be

pierced and these individuals can be held liable for the entire amount assessed, the Court

respectfully recommends that the motion to amend be denied.

Even if plaintiff could establish the necessary requirements to pierce the corporate veil, it

is unclear on what basis these individuals could be held liable for the corporation's entire

delinquency and not just for the damages caused by their own allegedly fraudulent conduct. See

Mars Elecs. of N.Y., Inc. v. U.S.A. Direct, Inc., 28 F. Supp. 2d at 98-100 (holding that it would

be inequitable to hold a corporate officer liable for the full amount of the default judgment absent

evidence that the corporate officer used domination of the corporation "to commit fraud with

respect to each and every transaction at issue"); Cordius Trust v. Kummerfeld, No. 99 CV 3200,

2007 WL 2435156, at *6 n.17 (S.D.N.Y. Aug. 29, 2007) (holding that "the inequity being

addressed in the lawsuit 'must flow from the misuse of the corporate form'") (internal citations

omitted).

While it may be that the corporate officers, Larry Haffez and Max Zalta, committed or

attempted to commit a fraud on the Court, it is not clear that they should be held responsible for

anything more than the damage caused by their fraudulent misrepresentations during discovery.

Given that the documents were produced as part of the discovery process or in the context of

settlement discussions that proved to be unsuccessful, it is unclear what the harm to plaintiff was

apart from counsel's time and that of Mr. Maurer in investigating and ferreting out the

misconduct. Thus, even if the district court were to find that defendants perpetrated a fraud, plaintiff has failed to articulate why they should be held liable for any damages other than that related to attorney's fees, which the Court has already recommended be awarded to plaintiff.

Accordingly, with respect to plaintiff's motion to amend, the Court respectfully recommends that the motion be denied as futile.[12]


## CONCLUSION

For the reasons set forth herein, the Court respectfully recommends that default judgment be entered in favor of the plaintiff and that plaintiff be awarded $73,181.03[13] in damages as a result of the breach of contract by A. Heffco Technologies, Inc., less any amount plaintiff is able to recover by selling any inventory remaining in its warehouse, and that plaintiff be awarded $23,915.53 in fees and costs. It is respectfully recommended that plaintiff be given until August 13, 2008 to supplement their submissions regarding an award of interest on damages. It is further

---

[12]Plaintiff's counsel submitted a letter, dated July 14, 2008, expressing concern that there has been undue delay in the issuance of this Report and Recommendation. (Pl.'s July Ltr at 2). The Court notes that plaintiff's seemingly relatively straightforward application for default damages was unnecessarily complicated by a number of factors. First, plaintiff's request was not supported by the invoices submitted to the Court; indeed, as noted, despite numerous attempts to reconcile plaintiff's request with the supporting documentation, the Court ultimately determined that plaintiff's request was overstated by more than $6,000 in principal. Second, plaintiff's submissions with respect to prejudgment interest appear to be arbitrary and incomplete. Finally, plaintiff's inadequate letter request for leave to amend the Complaint to impose full liability on A. Heffco's corporate officers further complicated the Court's review. Not only did plaintiff fail to submit a proposed amended complaint which would have clarified the basis on which plaintiff was seeking to amend, but the letter request failed to provide any authority to support what appeared to be an attempt to impose liability on the corporate officers in the absence of sufficient factual allegations necessary to pierce the corporate veil.

[13]This figure reflects a reduction of the damages award by $10,744.25 based on the amount plaintiff currently holds in escrow. Interest should be calculated on the full $83,925.28.

recommended that plaintiff's motion to amend be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
      August 6 , 2008

                                        Cheryl L. Pollak
                                        United States Magistrate Judge